Jamie McGrady
Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jamie_mcgrady@fd.org

*Counsel for Defendant Arthur Reyher*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff<br><br>vs.<br><br>ARTHUR REYHER,<br><br>　　　　　Defendant. | Case No. 1:23-cr-00138-RBW-5<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Arthur Reyher, through counsel, Jamie McGrady, Federal Defender, files the following sentencing memorandum in support of his sentencing on the charge of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). This sentencing is scheduled to take place before this Court on February 27, 2024. Mr. Reyher respectfully moves this Court to vary downward from his United States Sentencing Guidelines in this case and sentence him to a period of five years of probation, a $100 assessment, and $2,000 in restitution. Mr. Reyher submits the following memorandum in support of this sentencing request.

**I.　Guideline Calculation**

The presentence report correctly notes the agreed-upon United States Sentencing Guidelines calculation as 8-14 months, based upon a Total Offense Level of 11 and a Criminal History Category of I. PSR at ¶¶ 82,83. Mr. Reyher received an enhancement of

three levels pursuant to U.S.S.G. § 2A2.4(b)(1)(A) because he was part of a group of individuals that pushed into a line of law enforcement officers attempting to restrain the crowd, and thus his offense involved physical contact. *Id.*, at ¶ 46.

While the parties stipulated to a guideline of 8-16 months, Mr. Reyher should still technically qualify for the zero-point criminal history adjustment under § 4C1.1(a). United States Sentencing Guideline § 4C1.1(a) provides that a zero-point offender is eligible for a 2-level offense level reduction where the offense did not involve "violence or credible threats of violence in connection with the offense." Neither the Guideline nor the commentary defines "violence" but U.S.S.G. § 4B1.2(a)(1) broadly defines a crime of violence as any offense that includes as an element the use of force against the person of another. In construing the identical use of force clause under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), the Supreme Court has held that reckless or negligent applications of force do not encompass "use of force against the person of another." *Borden v. United States*, 593 U.S. 420 (2021). Applying this definition, Mr. Reyher's conduct is not violent if it did not rise to the level of purposeful or intentional conduct. Were the court to award Mr. Reyher the 2-point reduction based on criminal history, his guideline would be 4-10 months.

Mr. Reyher receives a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). With no prior convictions, Mr. Reyher has a criminal history score of zero, resulting in a Criminal History Category I. With a Total Offense Level of 11 and a Criminal History Category of I, his guidelines range is 8-14 months.

A sentence of five years of probation would place Mr. Reyher under the supervision of the federal government for a longer period than supervised release and would allow this

Court to resentence him should he fail to comply with his conditions of probation. Mr. Reyher believes that this sentence will demonstrate to the public that this offense was serious, will serve as deterrence to others and to himself, and will satisfy the other factors under these subsections. 18 U.S.C. § 3553(a)(2)(A)-(D). Mr. Reyher's history and characteristics, his demonstrated remorse and contrition, the nature and extent of his involvement in the events of January 6, 2021, and his continued compliance with and behavior while on pretrial supervision all support a downward variance to a five-year term of probation in this case.

## II. Nature and Circumstance of the Offense

The stipulated facts are correctly stated in the presentence report. The events of January 6, 2021, were violent—several people lost their lives, and dozens were injured. Much of the worst violence occurred in or near the lower West Terrace Tunnel, where Mr. Reyher found himself. Compared to some of the other participants in the violence at the tunnel entrance, some of whom are named within the same indictment, Mr. Reyher's involvement was minimal. All told, Mr. Reyher spent less than 15 minutes within the walls of the tunnel, in three short durations. Although he was involved in the collective pushing in the tunnel, he held his hands in the air and told other rioters "Don't hit 'em!" (PSR at 27). After their forays into the tunnel, the Reyhers retreated from the fray and were standing on the periphery when they saw Capitol Police Officer Michael Fanone being dragged from the lower West Terrace Tunnel into the crowd and assaulted. Officer Fanone has testified that he feared for his life, and appealed to the crowd's "humanity," shouting "I've got kids." *See* https://www.youtube.com/watch?v=cJGe4C3QqNQ. (time code 9:30). He went on to testify:

"Thankfully, some in the crowd stepped in and assisted me. Those few individuals protected me from a crowd and inched me toward the Capitol until my fellow officers could rescue me." *Id.*, (time stamp 1:30).

When Fanone was dragged from safety into the crowd, Mr. Reyher was standing with his wife at some distance from the tunnel entrance. He left his wife and placed himself between the press of the crowd and Officer Fanone. He screamed at the protestors to "BACK OFF!" and used himself as a shield until Fanone was safely behind the police line.



After the incident with Fanone, Mr. Reyher and his wife realized the gravity of the violence that was unfolding and left the area. The West Terrace was the site of some of the most frenzied fighting to occur on January 6, 2021, but the bulk of that occurred after Mr. Reyher and his wife had left the scene. (*See* Government's own recitation of escalating violence/timeline at 1:23-cr-138-RBW Docket 118).

Mr. Reyher agrees with the government that his offense, and all of the events surrounding January 6, 2021, are serious. This is why Mr. Reyher admitted his wrongdoing and pled guilty to a felony offense, despite his previous clean record. During an interview with law enforcement, Mr. Reyher admitted the following:

- He went to Washington, D.C. to peacefully protest what he viewed as a fraudulent election. He invited his wife to come with him, who is not a political person and would not have been in D.C. but for his invitation.

- He had only been to one other political rally, when President Obama was in office.

- They arrived after former President Trump began his speech on the morning of January 6, 2020, and marched to the Capital at the direction of Trump.

- Reyher knew that they were "trying to get Congress to investigate all of the election fraud issues" but wasn't aware that the goal of the protest was to de-certify the election.

- When asked why he repeatedly went into the tunnel, Reyher responded with an analogy, likening his thought process to when you are in high school and you see a fight and decide to get in the middle of it. He wasn't trying to provoke violence; he was trying to prevent it.

- Reyher inserted himself between people and bike racks that they were trying to throw into police, he grabbed a pole from someone who was trying to jab through the police line and handed it to law enforcement. He moved to protect Officer Fanone when he was drawn into the crowd.

- He realizes that by going into the tunnel and pushing against the police, he was in fact encouraging violence. His biggest regret is going into the tunnel, yelling push, and pushing with the crowd. He acknowledges that it was a stupid decision that led to a lot of awful outcomes.

### III.     The Sentencing Guidelines and Section 3553(a) Factors

The overriding sentencing principle, set forth in 18 U.S.C. § 3553(a), is to "impose a sentence that is sufficient, but not greater than necessary" to comply with the purposes of sentencing, which are retribution, deterrence, public protection, and rehabilitation. This objective can be met in the instant case by sentencing Mr. Reyher to a sentence below the Guidelines and placing him in a lengthy term of probation. While courts must continue to consider the sentencing guidelines, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

### A.   Mr. Reyher's Personal History and Characteristics

Arthur "Adam" Reyher is a devoted husband and father who very much regrets his actions leading up to, and on, January 6, 2021. Adam and Jessica Reyher have been married for 19 years. They were high school sweethearts. The Reyhers live on a 4+ acre property in Brownsburg, Indiana. They run numerous businesses or services. The two primary businesses are Adam's handyman business and Jessica's rental business. The Reyhers rent out equipment, motorcycles, boats, a motorhome and trailers. Nine people live at the Reyher residence including Adam and his wife Jessica.



Jessica's mother, Clarissa Wilson, lives with the Reyhers. She has a number of medical issues that leave her unable to live alone and is currently on a waiting list for a lung transplant. She does not drive and relies upon Jessica and Adam to drive her to her various medical appointments. The Reyhers also have four children, aged 18, 16,13, and 12. All of the Reyher children (and a cousin who has lived with them for several years) are homeschooled by Jessica and Adam. Jessica's cousin who was recently released from prison also lives with the Reyhers and helps Adam with his various businesses. They have provided both financial and housing support to him and to his son while he was in prison.

      The Reyhers live on what can be described as a hobby farm. They have six dogs, two snakes, two cats, a horse, a pony, a donkey, and a goose. Over the years the Reyhers have given unwanted and neglected animals a home to live out the remainder of their lives.

Friends and family describe the couple as very devoted to their family and friends. They routinely open their home and have provided financial support to many even though they don't live an extravagant lifestyle.

Mr. Reyher has changed significantly from the person he was at the time he joined in the Capital riot and attempted to push through that tunnel. The letters submitted on his behalf in Defense Exhibits describe a devoted friend and family man, one whom deeply regrets his involvement on that day.

### B. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

As the government has said, in fashioning as appropriate sentence for a January 6 defendant, the defendant's individual conduct must be assessed "on a spectrum." Government's Sentencing Memorandum, *United States v. Pert*, No.21-cr-139-TNM (D.D.C. 12/13/21)[ECF No. 49] at 10. In determining a fair and just sentence on this spectrum, the Court "should look to a number of critical factors," including:

(1) whether, when, and how the defendant entered the Capitol building;

(2) whether the defendant encouraged violence;

(3) whether the defendant encouraged property destruction;

(4) the defendant's reaction to acts of violence or destruction;

(5) whether during or after the riot, the defendant destroyed evidence;

(6) the length of the defendant's time inside the building and exactly where the defendant traveled;

(7) the defendant's statements in person or on social media

(8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and

(9) whether the defendant demonstrated sincere remorse of contrition.

*Id.* Application of these factors in this case places Mr. Reyher's conduct at a point on that spectrum that calls for a sentence of probation.

With respect to factor 1, Mr. Reyher did not come to D.C. on January 6, 2021, to interfere with Congress or engage in violence. Rather, he traveled to D.C. engage in lawful protest over what he saw as election fraud that was occurring within both political parties. He did not communicate or coordinate with anyone about his decision to travel to D.C. He and his wife never entered the Capitol building.

With respect to factors 2, 3 and 4, Mr. Reyher did not encourage violence or property destruction. As described above, he attempted to stop the assault of Capitol Police Officer Fanone. He also discouraged other protesters from using violence on many occasions that day. After the incident with Fanon, the Reyhers realized the gravity of the situation and left the area. They saw other protesters entering the Capital but decided to leave the area because of the escalating violence.

As to factor 5, there is no evidence that Reyher destroyed evidence to impede the investigation. As for factor 6, Mr. Reyher never entered the Capitol building. Factor 7 also cuts in favor of Reyher; he did not make any statements about the events prior to that day. He cannot remember if he has made any posts subsequent, but if he posted anything, he has not attempted to justify the events or to disavow responsibility for his actions. Mr. Reyher has cooperated with law enforcement (Factor 8) and has repeatedly expressed regret and remorse for his participation in the events of January 6, 2020 (Factor 9).

Mr. Reyher's behavior over the past year and his actions during the pendency of this case can give the Court the assurance it needs to Mr. Reyher will never engage in similar

conduct again. Mr. Reyher has been totally compliant with his pre-trial supervision. Mr. Reyher has experienced significant negative consequences as a result of his arrest and involvement in the events of that day. Before their arrest, the Reyhers had money saved in the bank and they were able to cover their monthly expenses. Since their arrest, they have lost numerous business opportunities and work contracts because of the negative publicity and continuous news coverage. The specter of losing the primary breadwinner to a period of incarceration has placed strain on their marriage and on their children. Mr. Reyher also carries the guilt of knowing that it was he who convinced his wife to join him to protest, and that she also now faces a potential jail sentence because of his decisions.

As other judges in this district have recognized, there are many other ways an individual can be punished besides jail time:

> People are all very quick to suggest that the only real punishment is a jail sentence, and it's just not true. People can suffer in many different ways and do suffer in many different ways a result of their conduct and that is something every judge, at least on this court, I believe, understands, and takes into account when they're fashioning an appropriate sentence.

*United States v. Andrew Cavanaugh*, 21-cr-362(APM), Sentencing Transcript at 29.

Although Mr. Reyher feels as though his conviction (and the corresponding collateral consequences described above) serve as adequate deterrence in his case, sentencing Mr. Reyher to a five-year probationary period will also serve to reinforce his good behavior and adequately protect the community against future crimes by Mr. Reyher. Mr. Reyher understands that a five-year period of probation will serve as five years during which he will be subject to a potential re-sentencing should he violate in this case. He does not take that lightly, but his good behavior for his entire life, excepting this incident, and his compliance

with pretrial conditions of release both demonstrate Mr. Reyher's capacity for continued success.

In addition, sentencing Mr. Reyher to a period of incarceration is not the way to ensure that the isolated events on January 6 will never occur again. The fact that Mr. Reyher was prosecuted, convicted of a felony offense, and is subject to all of the collateral consequences that such conviction entails would likely serve an equal public deterrent. As many attorneys have pointed out during January 6 litigation, a certainty of prosecution, rather than the severity of the punishment, often serves as a greater deterrent.[1] Mr. Reyher submits that a sentencing of five years of probation, during which he will be supervised and subject to conditions of supervision, is sufficient, but not greater than necessary, to provide general deterrence to the public to commit this type of offense.

### IV.   Conclusion

For the reasons stated above, Mr. Reyher requests that the Court grant his request for a downward variance and impose a sentence of five years of probation, a $100 special assessment, and $2,000 in restitution. Mr. Reyher additionally requests that the Court not impose an additional fine in this case pursuant to U.S.S.G. § 5E1.2(a). As noted in paragraph 78 of the presentence report, Mr. Reyher is unable to pay a monetary obligation in addition to restitution at this time.

---

[1] See, for example, National Institute of Justice, Five Things About Deterrence (June 5, 2016) full article available at Five Things About Deterrence | National Institute of Justice (ojp.gov) (last accessed 2.19.2024).

DATED at Anchorage, Alaska this 21st day of February, 2024.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

*/s/ Jamie McGrady*
Jamie McGrady
Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on February 20, 2024. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
*/s/ Jamie McGrady*